**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

| | |
|---|---|
| ZAYO GROUP, LLC, <br><br>      Plaintiff, <br><br>v. <br><br>CVIN, LLC, <br><br>      Defendant. | Case No. 5:25-cv-03483-BLF <br><br>**ORDER GRANTING *EX PARTE* MOTION FOR TEMPORARY RESTRAINING ORDER; AND SETTING SHOW CAUSE HEARING** <br><br>[Re: Dkt. No. 7] |

Plaintiff Zayo Group, LLC seeks to enjoin Defendant CVIN, LLC d/b/a Vast Networks from commencing a fiber optic cable replacement project scheduled to begin on April 23, 2025. Before the Court is Plaintiff's *Ex Parte* Motion for Temporary Restraining Order and Order to Show Cause Why a Preliminary Injunction Should Not Issue. Dkt. No. 7.

For the following reasons, the Court GRANTS the motion for temporary restraining order and ORDERS Defendant to show cause why a preliminary injunction restraining Defendant from initiating the project for 75 days should not issue. The Court SETS a show cause hearing for 9:00 a.m. on April 24, 2025 at Courtroom 1 of the Robert F. Peckham Federal Building & United States Courthouse, located at 280 South 1st Street, San Jose, CA 95113.

**I.  BACKGROUND**

This case concerns a Dark Fiber Indefeasible Right of Use ("IRU") Agreement between Plaintiff and Defendant. Plaintiff is a provider of communication infrastructure services that uses fiber optic cable to provide its services. Dkt. No. 7-2, Declaration of Aaron Werley in Support of Plaintiff's *Ex Parte* Motion for Temporary Restraining Order and Order to Show Cause ("Werley Decl.") ¶ 4. Fiber optic cable transmits data as light and is used by service providers like Plaintiff to enable people and companies to quickly send and/or receive data over the Internet. *Id.*

1    The contract at issue in this lawsuit dates to April 5, 2016, when a company called Integra
2    Telecom Holdings, Inc. ("Integra") entered into a Master Dark Fiber IRU Agreement with
3    Defendant, which enabled Integra to lease "dark fiber"—meaning excess fiber optic cable
4    capacity—from Defendant. *Id.* ¶¶ 6, 9. Later that month, Integra and Defendant entered into a
5    Dark Fiber Service Order ("Service Order 1"), thereby leasing two dark fiber routes in California
6    to Integra. *Id.* ¶¶ 11–12. Integra was later acquired by Plaintiff Zayo Group, LLC, *id.* ¶ 10, and
7    in December 2017, Plaintiff and Defendant entered into a second Dark Fiber Service Order
8    ("Service Order 2") that leased a second dark fiber route running from San Jose to Los Angeles,
9    *id.* ¶¶ 13–14. Since then, Plaintiff has used the dark fiber optic cable leased from Defendant via
10   the Agreement and the Service Orders to provide Internet access, telecommunications, and other
11   fiber optic-related services to its customers, which include "some of the largest Silicon Valley-
12   based tech companies in the world, as well as network carriers (both fixed and mobile), Cloud/AI
13   providers, educational institutions, governmental agencies, and so forth throughout California and
14   neighboring states." *Id.* ¶ 16.
15   On March 13, 2025, Defendant sent a letter to Plaintiff informing Plaintiff that Defendant
16   planned to replace fiber optic cable along Plaintiff's leased routes, and that the replacement project
17   could result in data outages "ranging from several days to several weeks or more over the course
18   of the next 3–6 months." *Id.* ¶¶ 17–19. Plaintiff had not received other notice of the project, and
19   its approval was not sought or received. Dkt. No. 7-3, Declaration of Nadine Heinen in Support of
20   Plaintiff's *Ex Parte* Motion for Temporary Restraining Order and Order to Show Cause ("Heinen
21   Decl.") ¶ 5. Various of Plaintiff's executives had a call with various of Defendant's executives on
22   April 14, 2025, at which point Plaintiff's executives learned that Defendant planned to initiate the
23   fiber replacement project on April 23, 2025. *Id.* ¶¶ 6–7. During a second call on April 21, 2025,
24   Plaintiff's executives requested a sixty-day extension of the start date for the project so that
25   Plaintiff could migrate its customers to a replacement network. *Id.* ¶ 8. Defendant did not accede
26   to the request, *id.*, so Plaintiff filed the present suit and motion for temporary restraining order.

27   **II.    LEGAL STANDARD**
28   The standard for issuing a temporary restraining order is identical to the standard for

issuing a preliminary injunction. *See Washington v. Trump*, 847 F.3d 1151, 1159 n.3 (9th Cir. 2017) ("[T]he legal standards applicable to TROs and preliminary injunctions are substantially identical." (internal quotation marks and citation omitted)). An injunction is a matter of equitable discretion and is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 22 (2008). And "a TRO 'should be restricted to . . . preserving the status quo and preventing irreparable harm just so long as is necessary to hold a [preliminary injunction] hearing and no longer.'" *E. Bay Sanctuary Covenant v. Trump*, 932 F.3d 742, 779 (9th Cir. 2018) (quoting *Granny Goose Foods, Inc. v. Brotherhood of Teamsters & Auto Truck Drivers Local No. 70*, 415 U.S. 423, 439 (1974)).

A plaintiff seeking preliminary injunctive relief must establish "[1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest." *Winter*, 555 U.S. at 20. "[I]f a plaintiff can only show that there are serious questions going to the merits—a lesser showing than likelihood of success on the merits—then a preliminary injunction may still issue if the balance of hardships tips sharply in the plaintiff's favor, and the other two *Winter* factors are satisfied." *Friends of the Wild Swan v. Weber*, 767 F.3d 936, 942 (9th Cir. 2014) (internal quotation marks and citations omitted).

### III. DISCUSSION

#### A. Analysis

Plaintiff filed the present lawsuit and motion for temporary restraining order on April 21, 2025, serving Defendant on that same date. Dkt. Nos. 1, 7, 7-5. Defendant has not filed an opposition to the motion.

The Court finds that Plaintiff has demonstrated a likelihood of success on the merits or at least serious questions going to the merits on its breach of contract claim. "To prevail on a cause of action for breach of contract, the plaintiff must prove (1) the contract, (2) the plaintiff's performance of the contract or excuse for nonperformance, (3) the defendant's breach, and (4) the resulting damage to the plaintiff." *Richman v. Hartley*, 224 Cal. App. 4th 1182, 1186 (2014).

"[I]f a party to a contract expressly or by implication repudiates the contract before the time for his or her performance has arrived, an anticipatory breach is said to have occurred." *Hewlett-Packard Co. v. Oracle Corp.*, 65 Cal. App. 5th 506, 550 (2021) (quoting *Romano v. Rockwell Internat., Inc.*, 14 Cal.4th 479, 489 (1996)).  Here, Plaintiff has submitted evidence supporting the existence of the contract and plaintiff's performance under it.  Dkt. No. 1-1 ("Dark Fiber IRU Agreement" or "Agreement"); Dkt. No. 1-2 ("Service Order 1"); Dkt. No. 1-3 ("Service Order 2"); Werley Decl. ¶ 15.  Plaintiff has also shown a likelihood of success in establishing that cutting the fiber optic lines would breach the Agreement and that it will be damaged by a breach by Defendant, since Plaintiff's declarant attests that "[a]ll of Zayo's customers that rely on the fiber encompassed by the two Service Orders would be affected by the data outages caused by the fiber replacement/repair effort" and those outages would harm those customers and put Zayo in breach of its agreements with them.  Werley Decl. ¶¶ 22–24.  The Court finds that Plaintiff has shown a likelihood of establishing a breach of the relevant contract by pointing to various contract terms granting Plaintiff "the exclusive and indefeasible right to use" the fiber optic cables covered by the service orders, *see* Agreement § 3.1, and entitling Plaintiff to "pre-approve[]" any changes to the fiber optic routes, Service Order 2 at 1.  Moreover, Plaintiff points out that other contract provisions require Defendant to give Plaintiff sixty days' notice of "relocation" of relevant fiber optic cables, Agreement § 11.2, and to enter into a separate agreement with Plaintiff prior to undertaking qualifying "Construction Services," *id.* § 9.

      The Court also finds that Plaintiff has shown that it is likely to suffer irreparable harm in the absence of preliminary relief.  "Evidence of threatened loss of prospective customers or goodwill certainly supports a finding of the possibility of irreparable harm," *Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 841 (9th Cir. 2001) (citation omitted), and the Court credits Plaintiff's assertion that Plaintiff's reputation may be seriously and irreparably damaged if Plaintiff fails to provide the network connectivity and communications services that it has contracted to provide to its customers, which may in turn suffer economic damages "in the tens or hundreds of millions of dollars" due to Defendant's planned data outages, Werley Decl. ¶¶ 16, 22–24.  As Plaintiff points out, the contents of the Parties' Agreement alludes to this irreparable harm

4

1  insofar as it requires Defendant to provide 24/7 maintenance services.  Agreement at 39.

2        The balance of equities also tips in Plaintiff's favor.  The requested temporary restraining
3  order will merely prevent Defendant from initiating a cable replacement project for a few days,
4  thus maintaining the status quo in terms of maintenance requirements for a brief period.
5  Defendant will then have an opportunity to show cause why a preliminary injunction should not
6  issue, at which point the Court can consider whether it is appropriate continue enjoining
7  Defendant from embarking on the cable replacement project for 75 days in order to permit
8  Plaintiff time to migrate its customers to a replacement network for the duration of the cable
9  replacement project.  Without the temporary restraining order, however, Plaintiff is likely to be put
10 in breach of its contracts with customers in such a significant way as to potentially impose
11 irreparable reputational harm, and those customers are likely to experience significant and harmful
12 telecommunications and data outages.  Relatedly, the injunction serves the public interest because
13 such data and communications outages may have far-reaching disruptive effects on both private
14 and public services—including potentially preventing individuals from placing 911 telephone
15 calls.  Werley Decl. ¶ 25.

16       For the foregoing reasons, the Court GRANTS Plaintiff's motion for temporary restraining
17 order.

18 **B. Security**

19       Federal Rule of Civil Procedure 65(c) provides that "[t]he court may issue a preliminary
20 injunction or a temporary restraining order only if the movant gives security in an amount that the
21 court considers proper to pay the costs and damages sustained by any party found to have been
22 wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c).  The Ninth Circuit has "recognized that
23 Rule 65(c) invests the district court with discretion as to the amount of security required, *if any*."
24 *Jorgensen v. Cassiday*, 320 F.3d 906, 919 (9th Cir. 2003) (internal quotation marks and citation
25 omitted) (italics in original).  In this case, the Parties' contract states that any "threatened breach of
26 the representations, warranties or covenants of [the] Agreement [that] would cause irreparable
27 injury" entitles the affected party to seek equitable relief "without the requirement of posting of
28 bond." Agreement § 25.4(c).  Therefore, the Court will not require security.

5

**C. Date of Show Cause Hearing**

The Court SETS a show cause hearing for 9:00 a.m. on April 24, 2025 at Courtroom 1 of the Robert F. Peckham Federal Building & United States Courthouse, located at 280 South 1st Street, San Jose, CA 95113. Any opposition brief filed by Defendant SHALL be received by the Court by 1:00 p.m. on April 23, 2025. No reply is allowed.

**IV.  ORDER**

For the foregoing reasons, IT IS HEREBY ORDERED that Plaintiff's motion for temporary restraining order is GRANTED. Defendant CVIN, LLC is enjoined from engaging in the replacement of its fiber optic cable networks located at its California-based fiber routes ranging from Soledad to Priest Valley and Wheeler Ridge to Castaic.

Defendant is ORDERED to appear before the Honorable Beth Labson Freeman on April 24, 2025 at 9:00 a.m. in Courtroom 1 of this Court, located at 280 South 1st Street, San Jose, CA 95113, to show cause why a preliminary injunction should not be ordered enjoining Defendant or its employees or agents, or any other persons acting with Defendant or on Defendant's behalf, from engaging in the replacement of the fiber optic cable networks located at Defendant's California-based fiber routes ranging from Soledad to Priest Valley and Wheeler Ridge to Castaic for a period of 75 days.

Counsel for Plaintiff shall serve this Order to Show Cause and Temporary Restraining Order, a copy of the Complaint, and a copy of the *Ex Parte* Motion for Temporary Restraining Order and Order to Show Cause and its supporting papers upon Defendant CVIN, LLC d/b/a Vast Networks by 6:00 p.m. on April 22, 2025. Defendant's opposition papers shall be due by 1:00 p.m. on April 23, 2025.

**IT IS SO ORDERED.**

Dated:  April 22, 2025

BETH LABSON FREEMAN
United States District Judge